IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EVELYN F. and JOE G.[1] a/n/f J.G., STACY M. a/n/f I.J., and TONYA P. a/n/f A.P.P.<br>Plaintiffs,<br><br>v.<br><br>LA FERIA INDEPENDENT SCHOOL DISTRICT, and JONATHAN FLORES,<br>Defendants. | § § § § § § § § § § § § § | CIVIL ACTION NO. <u>1:18-CV-71</u> |

## FIRST ORIGINAL COMPLAINT

**NOW COMES** "J.G" by and through her next friend and legal guardian, Evelyn F., I.J. by and through her next friend and legal guardian Stacy M., and A.P.P. by and through his next friend and legal guardian Tonya P. (collectively termed "Plaintiffs" herein) and file this *First Original Complaint* alleging that the La Feria Independent School District (hereinafter referred to as "LFISD" or the "School District") and Jonathan Flores, Individually (and hereinafter collectively termed "the Defendants"), violated the various rights of the Plaintiffs, all as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

### I. BRIEF INTRODUCTION TO THE CASE

1. A number of parents, including and especially Evelyn F., complained to the La Feria Independent School District staff on a number of occasions that Jonathon Flores, an employee with the District, was having inappropriate contact, of even a sexual nature,

---

[1] Initials are being used to protect the family's identity.

*First Original Complaint*      1

with small children, including her then four (4) year old daughter, J.G. It was also known by staff that he was taking pictures of the children. Also, that he gave some children gifts, like bracelets, lip gloss and headbands. He would take children to the bathroom and was seen to kiss a child on the tummy. He helped A.P.P. dry off his penis after urinating by "rubbing it really hard."

2. Even with this explicit knowledge, Staff failed to respond to any complaints, whether it be of Ms. G., or any other parent and refused to follow any of the relevant Title IX[2] Jurisprudence and even their own policy and procedures that required an investigation into such complaints. Not surprisingly, left unabated Flores continued in his abusive ways, harassing, assaulting, sexually assaulting and injuring a number of children, including Plaintiffs J.G., I.J and A.P.P.

3. Sadly, there is not a week that goes by where there is not some media story about the plight of a young person who is bullied, harassed, assaulted, or even sexually assaulted at their school. Frankly, it is a national epidemic. Unlike the task of containing the spread of a flu virus by means of vaccines and treatment, this type of epidemic is particularly difficult to treat because often the school district itself, as in Plaintiffs situation, is part of the illness and has refused, and continues to refuse to recognize its own responsibility.

4. For the families of children there is nothing sadder than seeing their own child suffer. To give meaning to their child's experience they feel compelled to tell their story. They feel a duty to do so in the hope the presentation of their story will prevent the same from happening to another family. In the course of this telling, these victims benefit from a healing effect. The healing and empowering effect is even more pronounced when the

---

[2]. Title IX of the Educational Acts of 1972, 20 U.S.C. sections 1681 through 1688.

story is told before a Judge, as the Plaintiffs have chosen to do in their case, so that the bright light and sanitizing effect of federal law and the Court's focus on this important issue and the School District's failures.

5. As such, Plaintiffs bring forth claims against the School District for violations of Title IX of the Educational Acts of 1972 and against the District and Flores for claims based upon violations of the Constitution of the United States, pursuant to 42 U.S.C. §1983.

## II. JURISDICTION

6. Jurisdiction is conferred in this Court pursuant to USC §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States, including Title IX of the Education Amendments of 1972, 42 U.S. Code §1983, and the federal regulations issued thereunder.

## III. VENUE

7. All or a substantial part of the events or omissions giving rise to this claim occurred in this Western District of Texas, Brownsville Division. Accordingly, venue lies within this District, pursuant to 28 U.S.C. §1391(b)(2).

## IV. PARTIES

8. J.G. lives with her mother, Evelyn F., in Harlingen, Texas. At all pertinent times they lived in the LFISD catchment area.

9. I.J. lives with her mother, Stacy M., in Edinburg, Texas. At all pertinent times they lived in the LFISD catchment area.

10. A.P.P. lives with his mother, Tonya P., in San Benito, Texas. At all pertinent times they lived in the LFISD catchment area.

11. The La Feria Independent School District is a school district organized under the laws of

the State of Texas. At all times pertinent to this case, J.G., I.J., and A.P.P. were students at the La Feria Independent School District. They may be served by and through their Superintendent, Mrs. Cathy Lee Hernandez at 505 N. Villarreal Street, La Feria, Texas 78559. Service may be waived by their attorneys of record, Mr. Miguel A. Saldana of Walsh, Gallegos, Trevino, Russo and Kyle P.C., 105 East 3rd Street, Weslaco, Texas 78596.

12. Jonathan Flores was a paraprofessional with the La Feria Independent School District during all pertinent times during the incidents that make the basis of this complaint. He is a Defendant in this cause in his individual capacity. It is unknown where he lives at this time and it is hopeful he may be served by and through Counsel for the School District, Mr. Miguel A. Saldana of Walsh, Gallegos, Trevino, Russo and Kyle P.C., 105 East 3rd Street, Weslaco, Texas 78596.

## V. HISTORICAL BACKGROUND OF TITLE IX

13. The Educational Acts of 1972 passed through Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. sections 1681 through 1688. It is commonly known as "Title IX" and states (in part) that:

> "No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."

It is intended to remedy the effects of discrimination based upon sex, gender or gender stereotypes. Moreover it is to assure that a student is not a victim of bullying, harassment, sexual harassment, assault or sexual assault because of their membership in this protected class.

A. The Operative Law & Regulations

14. The Department of Education promulgated rules to help implement Congress' intent at 34 C.F.R. §106.1, which became effective as early as July 1, 1975. From the inception of Title IX the United States Department of Education ("DOE") in their *Office for Civil Rights* (OCR) issued policy guidance on discriminatory harassment. They did so on discrimination based upon race (*see* 59 Fed. Reg. 11448 (Mar. 10, 1994) and later regarding harassment based upon sex ["Title IX"] (*see* 62 Fed. Reg. 12034 [Mar. 13, 1997]).

B. Gebser v. Lago Vista Independent School District

15. In 1998 the United States Supreme Court addressed the applicability and scope of civil liability against a school district, when one of the teachers was involved in a sexual relationship with a student. Gebser v. Lago Vista Independent School District, 524 U.S 274, 286 (1998).

16. The teacher and the student had intercourse during class time, although never on school property. The student did not report the relationship to school officials. After a police officer discovered the student and the teacher engaged in sexual intercourse, the teacher was arrested and terminated from employment. The student filed suit for sexual harassment under state law, Title IX, and §1983. The trial court dismissed the federal claims and remanded to state court for the state law negligence claims. The intermediate appellate court affirmed dismissal of the federal claims. The student sought review in the U.S. Supreme Court and determined that a student is permitted to recover for sexual harassment by one of the district's teachers when an official of the district, with the authority to take corrective actions, had actual notice of and was deliberately indifferent

to the misconduct.

C. Guidelines From The United States Department of Education, *Office of Civil Rights*

17. In any case, both before and the Gebser decision and in 2000 the OCR sent out a *Memorandum* or *Dear Colleague Letter* to public school districts across the country noting they could be held liable for civil damages when a student is bullied or harassed based upon sex or gender, as previously noted in the regulations promulgated at 62 Fed. Reg. 12034 (Mar. 13, 1997) and they were deliberately indifferent to such harassment.

18. It discussed, among other things the profound effects of harassment on a student, the laws and rules that apply and how such harassment, unrequited, effects a student's equal opportunity under those laws to receive an education. It reiterated all the various interventions needed to satisfy federal law, rules and OCR directives.

19. It reinforced the duty to provide the parent information about the Title IX Complaint process and the Title IX Coordinator for the District. It required that the investigatory process be prompt and impartial. Moreover, that if a person is unhappy with the result of an investigation information about the appeal procedure through the District's Grievance Process, the State Educational Agency and if necessary, the OCR..

20. Moreover, it reiterated developing caselaw noted in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999) that the District had a duty to remedy the effects of any bullying, harassment, assault or sexual assault a student experienced. This included, but was not limited to providing or paying for counseling to both the victim and to have a program to assess the effectiveness of interventions and monitor unresolved issues.

21. Over the course of over twenty years the Office of Civil Rights have offered guidance on such issues.

D. TEXAS LAW

22. It is long-standing and well-settled law, which states that educators have a duty to report abuse and neglect of a minor. *See* Texas Family Code §261.101; *see also* Texas Education Code §21.006[3]; 19 T.A.C. §61.1051. Abuse includes but is not limited to any type of sexual conduct or contact that causes or could cause emotional injury to a minor. Id. at §261.001(1)(A, B, E, F).

23. In addition, the Texas Education Agency ("TEA") developed Ethical Standards for teachers under what is termed the *State Board of Educator Certification* ("SBEC"). Among many things, the standards included language taken from the Texas Family Code.

24. In 2003 the duties that all educators had to report abuse was reinforced for School Superintendents who had specific duties, in addition to those noted in the Family Code, to report such allegations to the School Board of Trustees, TEA and SBEC. Texas Education Code §21.006( c), (d). In fact a School Superintendent who failed to take such reporting measures could liable civily, criminally or have an ethical complaint filed with TEA. They could even lose their own license.

E. Policies & Procedures Developed By the La Feria Independent School District

25. The La Feria Independent School District has long had and re-authorized policies and procedures related to *Student Welfare* and keeping students free from Discrimination, Harassment & Retaliation, that address among other things, teacher upon student sexual harassment and assault. It specifically *cites* a number of civil cases, chief among them the Gebser and Davis decisions noted above, upon which the interventions noted in school board policies rely.

---

[3]. This law was taken from Vernon's Civil Statutes and codified in 1995.

26. It sets out definitions of sexual harassment, information about reporting allegations of bullying and harassment between staff and a student, and their own investigatory procedures. It required allegations of bullying and harassment based upon sex or gender to be directed to the School District's Title IX Coordinator, and the family be given that person's contact information. The family also was required to receive actual notice of their procedural rights. The school district's investigation needed to be completed in a timely manner, usually less than 10 days, that a written report should be developed and interim action taken, as appropriate. The report must address whether or not prohibited contact occurred and must be filed with the relevant School District Official. If a student is not satisfied with the outcome of the investigation, they have the right to appeal the decision through the District's grievance procedure or even with the Office of Civil Rights with the U.S. Department of Education.

27. The School Board Policies also note a non-exhaustive list of potential corrective actions. They include for instance, a training program for the victim, a comprehensive education program for the school community and counseling to the victim. There also had to be a system to follow up with the victim to assess the effectiveness of any intervention that may have been provided. There is also discussion of increasing staff monitoring and assessment of the problem.

28. The La Feria Independent School District policy and procedures which were developed to address bullying, harassment, assault or even sexual assault based upon sex or gender fully follow the requisites of federal and state law, federal rules and regulations, case law, OCR guidelines and professional standards of care, all as noted above.

29. Nevertheless, the La Feria ISD has failed to adhere to all such duties whether

constitutional, pursuant to federal and state law, and federal and state regulations, as well as Ethical Standards for Educators and their own School Board Policies and Procedures.

## VI. FACTUAL ALLEGATIONS

A. ABOUT THE PLAINTIFFS

30. A.P.P. was born in 2010. J.G. was born in 2010. I.J. was born in 2010.

31. Each attended Sam Houston Elementary at the La Feria Independent School District at all pertinent times to this case.

B. DISTRICT POLICY AND PRACTICE ON TOILETING

32. The School District also had a policy that when a child had to go to the bathroom, two adults would go, so as to assure that nothing untoward would occur. Further, if one of the children was female, then one of the aides also had to be a female. Nevertheless, the District had an actual practice and custom that was different. Specifically, one aide could attend to the bathroom with a child, and that a male staff member could attend with a female student alone.

C. INCIDENTS AT THE LA FERIA INDEPENDENT SCHOOL DISTRICT

33. In 2014 A.P.P.'s teacher was Mrs. Guevara. Mr. Flores was an Aide in the classroom.

34. It was known by staff that Flores was taking pictures of the children. Further, that he gave some children gifts, like bracelets, lip gloss and headbands. He would take both male and female children to the bathroom by himself. He told the children he was their best friend. He would tickle children in their stomach and genital area and on one occasion was seen kissing a little girls' belly. He was clearly grooming children.

35. During this period Flores would take A.P.P. to the bathroom and clean his penis with a paper towel. Flores told A.P.P. it was okay because it was dirty. Flores would move the

*First Original Complaint* 9

paper towel really fast (in a masturbatory like motion) which hurt A.P.P. but he did not say anything to anybody, nor did anyone else, until months later as he was scared to do so.

36. In August 2014, J.G. came home crying. She told her mother, Ms. Evelyn F. that Jonathan Flores, her paraprofessional, poked her in her private parts while she was in the restroom. Mother checked and the child was red in the vaginal area. J.G. told mother that Flores watch her in the bathroom and sit next to her. J.G. told mother that he "tickled me down there." She also said that he "was her best friend."

37. Now this discussion put some other things in context, as when J.G. was in the shower or on the toilet at home she was preoccupied with her vaginal area. .

38. With all this in mind, Evelyn then went to Sam Houston Elementary the next day to report the outcry. She met with the Assistant Principal Isabela Villareal and the classroom teacher Mrs. Guevara. Ms. Guevara stated she did not see anything and Villareal stated it must be a monkey see monkey do thing, since another student had also accused Jonathan Flores of the same thing.

39. Unknown to Evelyn another parent, Gabriela Saldana reported that her son, J.S. had told her that Flores had "poked him in the butt." Mother reported the outcry to Villareal and Guevara.

40. Even with this troubling information corroborated now by two children and both their parents, neither Villareal nor Guevara reported the problem, pursuant to the School District's Policies and Procedures, to the Title IX Coordinator for the District or anyone for that matter.

41. Neither reported the incident to Child Protective Services, also as required.

42. Neither reported it to the local police.

43. Almost two weeks later, J.G. began to scream anytime she used the bathroom. She said it burned. She told mother that Mr. Flores had touched her again. Evelyn took her daughter to the Harlingen Medical Center Emergency Room where the physician informed her that J.G. had a bad vaginal infection.

44. Evelyn went back to the school and again reported her daughter's second outcry, this time to Ms. Chavez, a Head Start Employee. Chavez dismissed the complaint and even laughed in Evelyn's face. Ms. Villareal stated they would start an investigation and would call CPS but she did not.

45. Flores remained in the classroom.

46. Over the Fall of 2014 semester J.G. would cry when she dropped off at school.

47. Over this same period Evelyn complained on (or about) three other occasions about Flores but nothing was done.

48. Left unabated Flores continued in his abusive ways.

49. On or about February 3, 2015, Ms. Stacey M. gave a bath to I.J. and while drying her, I.J. made an outcry that a teacher had touched her private parts and pointed to the area.

50. Stacey went to Sam Houston Elementary and spoke with staff member Ms. Coronado.

51. Like those before her Ms. Coronado did not report the incident to the correct authorities, CPS or Police, or the Title IX Coordinator, or anyone for that matter, as otherwise pursuant to the School District's policies and Procedures. Again, there was no investigation into the incident.

52. Stacey took I.J. to Dr. Cesar Costa-Luna at Harlingen Kids Clinic, and after performing his exam he told Stacey I.J. had a rash on her vaginal area. Undeterred Stacey then went

to the school and spoke with the Principal, Nora De Los Santos, who told I.J. to tell the truth and she would not get in trouble. Ms. De Los Santos told Stacey that she would inform Superintendent Raymundo Villareal but he did not respond either.

53. That same day, Stacey also called and reported the outcry to CPS. I.J. told the investigator that Jonathan Flores had tickled her all the way down to her private parts. She also stated when the class was sitting on a red carpet watching a Mickey Mouse movie, Jonathan Flores touched her and four other girls, all in their private parts. I.J also reported that Jonathan Flores put his finger in her private parts and pointed to her vagina. Also that he touched her in the butt. She recounted that she was standing up and Flores was at the name tag box. She further stated he touched her under her "chonis." I.J. was taken to the Valley Baptist Medical Center and lab results detected a urinary tract infection.

54. During this same period. Ms. P. was concerned about A.P.P. wetting the bed and acting out in school and at home. A friend of Ms. P., Maria Benites, asked A.P.P. how was school. She then asked if anyone ever touched him in a place where he was not supposed to be touched. A.P.P. responded yes, that Mr. Flores would clean his penis in the restroom with a paper towel. He further stated that Flores did it real fast and it hurt. Flores told A.P.P. it was okay because it was dirty.

55. Ms. P. made a written statement to staff member Ms. J. Gonzales at Sam Houston Elementary regarding A.P.P.'s outcry but to her knowledge, Ms. Gonzales just like the other staff members, failed to report the outcry to the District's Title IX Coordinator, or CPS, or the Police or anyone else for that matter.

56. Not surprisingly, all the children continue to have lasting and lingering effects of the

sexual abuse they endured at the hand of Jonathan Flores, predator and ex-teacher. A.P.P. now has anger, aggression, and sleep issues and has to take medication. He is now also afraid of male teachers.

D. THE FAILURES OF THE SCHOOL DISTRICT

57. First, Jonathan Flores never should have been able to continue working with children after multiple accusations of sexual misconduct that the School District was well aware of in the Fall of 2014.

58. Further, staff at the School failed to tell the Principal of the overt and troubling behaviors of Jonathan Flores including and especially the fact all staff in the classroom knew that he was touching a number of students in the classroom inappropriately, including and especially A.P.P., I.J., and J.G.

59. Nothing was done about Jonathan Flores's behaviors and the sexual assaults continued.

60. Moreover, and most importantly, the School District has also developed policies and procedures to protect students like the Plaintiffs from such sexual harassment. Those policies gave both the Plaintiffs and their parents a number of procedural and substantive rights. The District failed to provide such items.

61. They include but are not limited to, first and foremost, the rights to receive notice of their procedural rights, because of their status as people who were sexually assaulted. The District failed to provide such items.

62. Plaintiffs never received notice of who the Title IX Coordinator was for the District, in regard to investigating allegations of the sexual harassment.

63. Plaintiffs were never provided information about their right to file a formal grievance with the School District.

64. Plaintiffs were never provided information about their right to file a formal grievance with the Texas Education Agency.

65. The School District never provided the family information about their right to file a formal complaint with the Office of Civil Rights.

66. The School District did not even follow their own policies and procedures requiring allegations of sexual harassment be investigated by the appropriate staff member.

67. The District never provided a psychological assessment to the children.

68. The District never provided school-based counseling services to the children.

69. The District never provided reimbursement to the parents for community-based counseling services for the children.

70. The District never provided reimbursement to the parents for community-based medical and transportation services for their children.

71. The District never provided a class or program on social skills as to how to deal with the children experienced harassment.

72. The District failed to do anything to prevent the sexual harassment the children experienced.

73. The District failed to do anything to remedy the effects of the sexual harassment the children experienced.

## VII. STATE ACTION

74. Plaintiffs incorporate by reference all the above-related paragraphs, and each one below, incorporates by reference the one above, as well as those below, with the same force and effect as if herein set forth.

75. The Defendants, in any Official and Individual Capacities and in all matters were acting

under color of state law when they subjected Plaintiffs to the wrongs and injuries set forth herein.

## VIII. UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS AND VIOLATION TO DUE PROCESS CLAUSE OF THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION

76. Plaintiffs contend that these failures of the School District Defendant to have policies, procedures, practices and customs in place to protect the children, from the very same professional staff who were intended to keep them safe, violated their rights pursuant to the Fourteenth Amendment of the Constitution of the United States for which each seeks recovery pursuant to 42 U.S.C. §1983.

77. Plaintiffs contend that the School District Defendant failed to sufficiently train staff, in addressing the needs of children who were targets of harassment, assault and sexual assault, thereby violated their rights pursuant to the Fourteenth Amendment of the Constitution of the United States for which each seeks recovery pursuant to 42 U.S.C. §1983.

78. Plaintiffs contend that the School District Defendant failed to sufficiently supervise staff, in addressing the needs of children who were the targets of harassment, assault and sexual assault, thereby violated the rights of each pursuant to the Fourteenth Amendment of the Constitution of the United States for which G.F. seeks recovery pursuant to 42 U.S.C. §1983.

79. Furthermore, during the relevant time period contemplated by this cause of action, Defendants by and through their various professional staff designees, noted above including but not limited to Assistant Principal Isabella Villareal, Ms. Guevara, Ms. Chavez, Ms. Gonzalez and the District's Superintendent, Raymundo Villareal, did not

follow both federal and state law, federal and state regulations, federal and state executive agency directives in regard to the treatment of student and such failures was a moving force in the injuries to them.

80. During the relevant time period contemplated by this cause of action, Defendants by and through their designees, noted above, had an actual policy, practice and custom of conscious and deliberate indifference to federal law, federal and state administrative directives, and School Board policies and procedures in regard to the treatment of Plaintiffs and such failures were a moving force in the injuries to them.

81. Based upon the operative facts, such acts and omissions rise to the level of deliberate indifference and conscious indifference constituting a violation of the Fourteenth Amendment of the Constitution of the United States, by Defendants for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

## IX. VIOLATIONS OF THE U.S. CONSTITUTION BY FLORES

82. Plaintiffs contend that the acts and omissions of Defendant Jonathon Flores violated the rights of each child, pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983 as the use of such restraint unnecessary. Further, that such force was excessive.

83. Plaintiffs additionally contend that the acts and omissions of Defendant Flores violated the liberty interests of Plaintiffs pursuant to the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983 as he violated their rights to *Equal Protection*. Specifically, that the each child did not receive equal access to a public education during the entire time period both before and leading up to the incidents in question.

## X. CLAIMS FOR RELIEF PURSUANT TO TITLE IX

84. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

85. Title IX specifically notes the standards of liability for a public entity in regard to the Title IX claim. The claimant must be a member of a protected class; must be bullied, harassed or assaulted based upon membership in that class; the Defendant entity must be on notice as to the allegations; be deliberately indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities and/or other damages. Plaintiffs easily satisfy all the threshold requirements.

86. Plaintiffs further contend that these failures of the Defendant School District to have effective policies, procedures, practices and customs in place to assure Plaintiffs were not victims of harassment, assault, or sexual assault based upon gender, or based upon stereotypes based upon gender, and due to such failures violated Plaintiffs rights pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 et seq., upon which they now seeks recovery.

87. Plaintiffs experienced significant injuries thereby.

## XI. RATIFICATION

88. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

89. The La Feria ISD ratified the acts, omissions and customs of school district personnel and staff.

90. As a result, the La Feria ISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of Plaintiffs.

## XII. PROXIMATE CAUSE

91. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

92. Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIII. DAMAGES

93. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

94. As a direct and proximate result of Defendants conduct, they are jointly and severally liable to Plaintiffs who have each suffered injuries and damages, for which they are entitled to recover herein including but not limited to:

    a. Loss of educational opportunities;

    b. Physical pain in the past;

    c. Physical pain in the future;

    d. Medical expenses in the past;

    e. Medical expenses in the future;

    f. Mental anguish in the past;

    g. Mental anguish in the future;

    h. Mental health expenses in the future;

    i. Physical impairment in the past;

    j. Various out-of-pocket expenses incurred by his family but for the acts and omissions of the School District; and

95. Attorneys fees and costs of the case, as permitted by law.

96. In addition, Defendants, jointly and severally are liable to A.P.P., I.J., and J.G for punitive damages.

## XIV. PLAINTIFFS REQUEST TRIAL BY JURY

## XV. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, and enter a judgment against the Defendants, jointly and severally, including but not limited to the following; recovery of attorney's fees and costs for the preparation and trial of this cause; and for its appeal if required, pursuant to Title IX, 42 U.S.C. §1983 and 1988; and 42 U.S.C. §2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, or law, or both, deems just and proper.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
Cirkiel & Associates, P.C.
SBN 00783829
FID 21488
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

Mr. Anthony O'Hanlon, ESQ.
Attorney & Counselor At Law
SBN 15235520
111 South Travis Street
Sherman, Texas 75090
(903) 892-9133 [Telephone]
(903) 957-4302 [Facsimile]
ahanlon@somlaw.net [Email]

**ATTORNEYS FOR PLAINTIFFS**